11-2040. Edward Lint versus John Lesnick. Argument not to exceed 15 minutes per side. Ms. Late, you may proceed for the appellant. Thank you. Please proceed. May it please the court. My name is Marcy Late, and I'm appearing today pro bono on behalf of the petitioner appellant, Edward Lint. This case is a prime example of lawyer incompetence. Mr. Lint's trial counsel, who was eventually suspended from the practice of law, denied Mr. Lint of his federal right to effective assistance of counsel at every trial. In the beginning, rather than conducting any investigation whatsoever into the facts and circumstances underlying his wife's complaint, he simply did nothing. He failed to interview any key witnesses. He failed to even respond to messages that were left at his office about key information for the case. Now, had he conducted an investigation, he would have discovered substantial self-exculpatory evidence that would have directly contradicted the credibility of Maya Lint, who even the prosecutor himself stood up during closing arguments and said her credibility was the key issue. If the jurors believed her, they had to convict. Is this about the phone records? Yes, Your Honor. That's one of the biggest issues here, is that there were phone records that And there's kind of an argument here that the phone records may or may not have been exculpatory. There's another way of reading this. If you look at the records before us, there's another way of reading those records that could have been certainly a judgment call made about whether they were helpful or they're not helpful. They're not clearly helpful to the defendant. Well, Your Honor, under controlling the Supreme Court precedent, a trial strategy is only reasonable if it's actually an investigation that's made. And when no investigation is made, trial strategy is not given the same deference unless there's a reason and deliberate decision not to do an investigation. And here there simply was no reasoned decision not to investigate. There was just a pure lack of investigation. And that's actually supported by the fact that Mr. Hoare was eventually suspended from the practice of law for very similar conduct, for neglecting cases, for failing to keep his clients reasonably informed of the matters. Sounds like 404B evidence, though. You know, that's other bad acts that don't really pertain. He wasn't suspended because of his practice in this case. That's correct. He was not suspended because of the practice in this case. So it's not conclusive evidence of attorney misconduct. Is it even in the record? Well, it's not in the underlying record, but I do believe that the court can take judicial notice of the fact that he was suspended because it is a decision made by the Attorney Disciplinary Board of the State of Michigan. So Mr. Hoare put on a case, didn't he? He put on a defense case. There were witnesses. There were witnesses called. Family members. Yes, Your Honor. Okay, so he did nothing, but now he did put on a defense. So acknowledge what he did do. He did put on a very minimal defense, Your Honor. He put on two witnesses who he actually never even interviewed before he put them on the stand. And he never filed a witness list either. And so what he was able to do with those witnesses was extremely limited. I'm not sure how the record reflects that he never met with them. I believe that it's in his pleadings in the state court, but it's not actually in the state court record itself. I preside over cases all the time in which the defense doesn't put on a single witness. And Your Honor, it may well be that there are circumstances in which not putting on a single witness is a matter of trial strategy. But again, that trial strategy only receives deference if there's a complete investigation into the underlying facts. And here there was no investigation and no deliberate decision not to do an investigation. Is this case governed by EDPA? Well, you know, that's an interesting question, Your Honor, because as you know, EDPA applies if the state courts actually adjudicate a federal claim on the merits. And here I think that it's arguable that there was no adjudication of certain of the claims on the merits. Take, for example, The assistance of counsel, was that raised in the state court? It was, Your Honor. How did the court rule on it? Well, so there's three bases for an ineffective assistance of counsel here, and each one was ruled in a different manner. So, Your Honor, Okay, well, the failure to investigate, that one was that the trial court, that the judge, even if he would, or excuse me, that counsel, even if he would have presented the evidence, that Mr. Lynch could not show prejudice. So that wasn't said. We have to give deference to that? You do have to give deference to that. That, to me, is your big hurdle. You make a kind of sympathetic argument one that has compelling nature to it, but our court just gets reversed all the time when we go in and start second-guessing state courts when EDFA applies. You're familiar with those cases? Yes. Yes. And, Your Honor, I Don't those cases sort of tell us that it's got to be pretty unreasonable, that determination of prejudice? Maybe you should address that. Yes, Your Honor. Do you see what I'm asking? I do. Yes. Your Honor, yes. It is, you know, it is a substantial burden to overcome at EDFA, but we do believe that based on the facts and circumstances here, Mr. Lynch does meet that burden. But the burden here is with respect to prejudice, because the district court said, I'm sorry, the state court said there was no prejudice, is that correct? Correct. It did. So that has to be not just wrong, but unreasonably wrong. Why is that unreasonably wrong, that's my question. Well, with respect to this failure to investigate, I think the reason that's unreasonably wrong is because this entire case rested on one person's credibility, and that's Maya Lynn. And if he would have investigated and if he would have discovered these phone records, for example, that would have completely attacked her credibility. She got up on the stand and said that she had been kidnapped for two days, that hadn't been able to communicate with anybody, that she had never talked to anybody during that entire time period. Now, looking at these phone records... You might have found her guilty, even if she had been able to do that. Didn't they have evidence of the items he used to hold her there, the iron suspended in the TV that was going to fall on her? I mean, there was evidence beyond her testimony, wasn't there, Counsel? Well, Your Honor, there was evidence that there was an iron in the apartment, which most of us have irons in our... You know, there was evidence that there were utility straps in the laundry room. I'm really not parsing every little detail with you. I want to ask if, indeed, you have to go to the prejudice. So, if there were some evidence, even if we had phone records, would that have damned this case under our standard of review? I believe so, because there was no real supporting evidence that to support all of these stories that she was testifying to at trial. The key thing here is whether or not she was kidnapped. That's the key thing. Was she kidnapped? And if she was making multiple phone calls to her brother and her mother during the time period that she was kidnapped, does that create a reasonable probability that a juror may not have believed her credibility? I think so. And all it takes is one juror. That's all it takes is for one juror to have not believed her based on the fact that there were phone records that completely contradicted what she testified about. Now, aside from the failure to investigate, there are two other bases for Mr. Lindt's ineffective assistance of counsel claim, and that's a failure to communicate a plea offer and a failure to object to jury instruction that actually allowed the jury to ultimately convict Mr. Lindt on the theory of kidnapping by secret confinement, which was a theory of criminality that was never even charged against him. Yeah, I had trouble following that secret confinement argument because if you look at the language of the statute it just says forcibly or secretly, right? It does, Your Honor. And as instructed, you had to find Horace, right? That was one of the only ones that they had to find was Horace? That's correct, Your Honor. So where's the harm in it? Just at that level of simplicity, I don't have to see where the harm is. If you said you don't have to find Horace because this was secret, then I can say, well, yeah, maybe the jury didn't think there was Horace, but the instructions said you had to find Horace, right? Correct, Your Honor. So, you know, the Michigan at the time that Mr. Lindt was charged, the Michigan statute for kidnapping had a number of different theories on how you could prove kidnapping. And one theory was kidnapping by forcible confinement and that theory actually also included an aspiratation element. Is that a gloss that the court put into it or is that in the statute? I believe that's actually through case law that aspiratation is required element of kidnapping by Now, aspiratation is not a requirement for kidnapping by secret confinement, but secrecy is. So by proceeding under secrecy, they didn't have to show aspiration. But they had to show secrecy, which is not an element for kidnapping by forcible confinement. It just seems like that's all a matter of state law and state court rule. It doesn't make any difference. Well, it's not a matter of state law because every defendant has six amendment rights being formed of the charges against him. And by Mr. Lindt receiving notice that he was only being charged by kidnapping by forcible confinement and not kidnapping by secret confinement, he never had the opportunity to present or prepare a defense on the secrecy element. And Mr. Ford's acquiescence in allowing the jury to receive such an instruction but that only hurt him because he didn't have to show aspiration. No, it hurt him because he wasn't able to prepare a defense on the secrecy element. In other words, he wasn't able to prepare a defense as forcibly or secretly. But the Michigan courts have construed that as two different theories of criminality, either forcible confinement or secret confinement. And so when he received notice that he was being charged with forcible confinement, he received notice only that he needed to prepare a defense for the elements that the state courts and the jury instructions and the statute made for forcible confinement. He had no notice that he had to prepare a defense for the elements of a charge of kidnapping by secret confinement. We have to decide that the decision by the Michigan Court of Appeals, finding that there was no ineffective assistance of counsel in failing to protect the defendant's rights with respect to this is some unreasonable it's clearly established Supreme Court law has to be our test, doesn't it? Yes, Your Honor. Do you have a case that would support that? That that decision violates clearly established Supreme Court precedent? Well, Your Honor, there's clearly established Supreme Court precedent that... Under Strickland. This is under Strickland. Under Strickland... You can probably answer this when we get back up. Thank you, Your Honor. Thank you. Thank you. Thank you, Mr. Court. Andrea Christensen of the Michigan Attorney General's Office appearing on behalf of the state. The state courts here considered and rejected all three claims of ineffective assistance of counsel. And when the court was analyzing these claims under the doubly deferential standard under EBFA, he has not met his burden. Mr. Lynn has not met his burden. To begin addressing what sister counsel has already addressed, Mr. Orr's suspension from the practice of law, as Your Honor stated, is technically 404B evidence and has absolutely no bearing on this case. And secondly, as she jumped to the filter to investigate, the phone records, as Your Honor stated, this court has to find that that determination was unreasonably wrong. And here we vehemently contest that that was unreasonably wrong for the following reasons. First, one of the witnesses that the defense put on was Amanda Lindt. That is Mr. Lindt's sister. She testified that she had spoken to Maya Lindt, I believe it was three times total over November 9th to November 11th. However, the significant day was November 10th. That was the 24-hour period that she was secretly confined. And she noted that she had spoken to her twice that day. That's number one. So there was evidence that was submitted regarding phone calls. And secondly, as the state court attested to, there is no way to know who made those phone calls, who received those phone calls, and who was on the other end of the line. Maya Lindt testified that Edward Lindt removed her cell phone from her and held onto it. It was in his pocket during the entire time when he was awake. So whether or not... If it wouldn't have shown who was, excuse me, whether it was Maya Lindt or Edward Lindt who made the phone calls, that Maya Lindt testified it wasn't her. So if he would have further investigated, you may have found out who was on the other line, and I believe that Mr. Lindt put in his affidavit that it was her mother, her brother, things like that. However, what it doesn't show is who actually made the phone call. It doesn't show that Maya Lindt was in possession of her cell phone. She testified that she didn't have it. Counsel did have that information. Oh no, he did have the information. He didn't present it because it wasn't worthwhile. He did have the information. In fact, I believe it was in... About all of the other phone calls. What Mr. Lindt stated was that he let his attorney know about phone calls, and so our position is that he did investigate it, and then the reason that he didn't present it was because there was no information to... What she's saying is that there are records of phone calls that the attorney didn't have and therefore couldn't use at trial. Is that wrong? I do believe that it's wrong. I believe he had them and he purposefully did not present them. There's no evidence that he didn't have them. There's only Mr. Lindt's affidavit saying that he didn't have them. However, there's no evidence in the record to suggest that that's true, and under AEDPA, you can't overcome that burden with an affidavit from the defendant. There's just no evidence in the record to state that he didn't investigate it because Edward Lindt put in his affidavit that he told his counsel about phone records, that he told his counsel about these other witnesses that could have testified to the phone line being cut to blinds being on the wall. There's no evidence to show that he didn't proceed and investigate that information and simply not present it because it wasn't beneficial or it was cumulative or it was not exculpatory. He did put on a limited defense, and as your Honor stated, you don't have to put on any witnesses to put on a defense. He put on two witnesses to undermine the credibility of Myland. However, what defense counsel did do very well was he undermined her credibility through her own cross-examination. He poked holes in every single bit of her testimony. And speaking of that, skipping to the instruction and the content of the information. As your Honor stated, that is a matter of state law. The Michigan Court of Appeals determined that the information was proper under Michigan law, and this Court should defer to that. However, what I think we're leaving out here about the Michigan kidnapping statute, which has since been amended, it was amended in 2006 because it was not crystal and clearly worded, was that there were multiple, there were actually, the Court has determined that there were six viable theories of kidnapping. One is forcible confinement, and that does require exportation. And there is secret confinement, but there is also, one that was left out was forcible confinement with the intent to secretly confine. And if this Court reads the instructions, that is the charge that the defense, or excuse me, that Mr. Lynn was charged with. And the Michigan Courts determined that the information was sufficient enough to notify him of that. How was it sufficient if it didn't refer to secret? If it didn't refer to secret, that is, that's what I would refer the Court to cases of People v. Jaffray and People v. Hoffman, and in those cases, quote, with intent to secretly confine, unquote, was not mentioned in the information and it was considered sufficient to let counsel know. And in addition, How is it, apart from psych authority, how is it sufficient? It's just like counsel should know that that's what's going on because I would submit that counsel did know what was going on. And if we look at the record, I understand that's not the question. How are they supposed to know what's going on? How they would know what's going on is because of the nature of the case. There was no exportation here. I don't think that there's any debate that there was no exportation here. So throughout the entire trial prep... Exportation is moving her from one place to another. Is that the idea? Correct. And they are different theories. However, Mr. Hoare's entire theory of defense was based upon the secret confinement and undercutting the prosecution's theory that she was secretly confined. He presented evidence that they had moved around, that they had gone to to get pizza, that they had gone through drive-thru. He didn't argue that she was an escort? No. No, because that wasn't what the theory was. The prosecution knew it, the defense knew it. Was there objection to the instructions? No, there was not. So this would be a binary review? Yes. In addition... The argument then, I guess, is that it's an effective assistance to counsel not to object. Correct. However, even if that was the case, while I argued that there was no error here, there was no deficient performance because counsel knew what the theory was, even if this court was to disagree and say that there was an error here and that he should have objected, the result of that objection, the prosecutor immediately would have amended the petition and the trial would have continued exactly how it did in this case because everybody already knew what the theory was. And what about the guilty plea offer? The plea offer? With respect to that, I would argue that there's no real evidence that any offer was even made. The only evidence that has been preferred here are three affidavits, one from defendants... You say three affidavits are not evidence. Oh, I'm not saying that they're not evidence. I'm saying they're self-serving evidence. And that here, under Richter, Harrington v. Strickler, under Penholster, under this court's recent decision in Ballinger, that is not enough, number one, to overcome Strickland itself, but even to require an evidentiary hearing. That's just not enough. There was no, with the exception of defendants affidavit and the affidavit of his parents, there was no attached plea form. There was no affidavit from the prosecutor. How would you ever prove a undelivered plea agreement if you couldn't say, I never got it? No, I completely agree. I completely agree. It's a difficult test. However, it's defendant's burden to meet it. And he hasn't met it yet. Well, you didn't get the hearing. That's true. Don't you have this sense that you'd really like to have that? Don't you have a bunch of questions you wish they'd been asked at that evidentiary hearing to kind of sort that out? We would always love to have an evidentiary hearing transcript to go off of. However, it had been the state court's discretion to grant an evidentiary hearing. And here, the court looked at the three affidavits that were submitted and determined that to be break hearsay because they were hearsay with respect to this plea offer agreement, alleged plea offer agreement. And there's no evidence that it ever existed. And these three affidavits are not enough to warrant an evidentiary hearing in the state court, as the state court determined, and also in the federal court. And I think that this court has been very clear, especially under Ballinger, that it's always appealing to be able to supplement the record at an evidentiary hearing. Why don't you know whether the offer was made? Why don't I know? Yeah. We're the people, right? I do know it wasn't made. That's because there is no evidence that one was made. It is Mr. Lentz-Bergman here to show that one was made. And these three affidavits do not do that. Do you keep records of what offers are made? Do your prosecutors have to, or generally? With my experience in the Michigan courts, the majority of a plea agreement, and it comes in a form, yes. That's my experience. My question is do they, is there other records of that? So that an attorney could have sought discovery to see what kinds of Yes. Of records, of offers were made. And I can't speak for every Michigan court, however the ones that I'm familiar with, if a formal plea offer is made, there is a form, and it is kept in the prosecutor's file. I am happy to if the panel has any. Thank you. And just to close, we would ask that the court affirmed Mr. Kurtz's decision. Thank you. Go ahead. When I started here, I want to respond to Judge Cook's question that she presented before I left the stand. And you asked whether there was any Supreme Court precedent finding that a failure to object to a jury instruction would be a violation of And there is no exact case on question, Your Honor. However, there are cases in the Sixth Circuit where the court has found that a failure to object to a jury instruction does constitute ineffective assistance of counsel. And those are cited in our brief, Lucas v. Day, and also United States v. Combs. Also, on the issue of the failure to investigate, the evidence is that Mr. Hoard did not have those phone records at trial. And the reason he didn't have those phone records at trial was because he didn't perform the investigation. Now... But that's what he says he didn't have them. Your opposing counsel says she thinks he didn't have them, and the only evidence he didn't have them is he says he didn't have them. Is that accurate? Maybe that's enough, but is there any other evidence that he had that he didn't have? I believe, Your Honor, that during the trial he actually asked Maya if she had brought the phone records with her, which he had asked her to do, and she said no. So that is another evidence. And I don't have that exact record cite for you, but I can get that to you. And these phone records, they also come into play with respect to the jury instructions and the failure to object to the element of secret confinement, because if in fact he was informed that he could be convicted on a theory of kidnapping by secret confinement, then these phone records become even more crucial because they really would demonstrate that she was not held in secrecy, but that she had been in communication with her brother and her mother throughout the entire time. But the issue on the phone records is you don't know who made those calls. There's not a name. There's not a name, you're correct, but if he would have conducted an investigation, if he would have talked to her mother, if he would have talked to the brother. But he conducted an investigation, I think your argument is just simply it just wasn't enough, right? No. Was there actually some investigation because he had these witnesses? I don't believe he did conduct an investigation, no. I think he talked to his client, and that's all he did. And that's all the evidence shows, that he talked to his client, his client told him certain things, and he left it at that. Now, one of the things the government did is they directed you to People v. Jaffee, which is a Michigan Supreme Court decision in which the court determined that an information charging that the defendant forcibly or secretly confined the victim was sufficient to encompass a charge of forcible confinement with intent to secretly confine. And that case is wholly distinguishable here because that charge identified both the forcible and secret element to kidnapping, whereas this case did not. Your opposing counsel argues that the whole case was about how secret it was, not about whether there was aspartation. Is that a fair characterization of the case? I don't believe so, Your Honor. In what respect is it not? Well, also... On the surface, it appears to be. Well, as she pointed out, much of the case was about how they were leaving the house and going from place to place to place. That certainly is defined as movement, which is what aspartation is. And while going from place to place to place could also indicate that... What place are you talking about? Well, during the time that she was allegedly held captive, they went to a convenience store, they went to a Burger King drive-thru, they stopped at a Papa John's pizza place. Is there any argument that they didn't do that? Is there any argument that they did not do that? No. No, there's not. So the issue of aspartation or not really wasn't developed in the trial. I think what she was saying is that wasn't what they were arguing about. There's no evidence of aspartation, but that wasn't the issue that was contested. Instead, the issue that was contested, ably or not, was how secret it was, not how much aspartation was going on. So to say, well, there was some evidence of aspartation doesn't really go to the argument that she's making. I'm not saying I accept it, but I'm wondering how you respond to it, that the case as tried wasn't really about aspartation, it was about secrecy. You're right that in closing arguments, the case was about secrecy, but that's because James Hoare allowed the case to become about secrecy, and allowed the jury to be instructed about secrecy, and allowed the prosecutor to base his closing argument on secrecy, even though Mr. Lyte had not been charged with that crime. Thank you, Your Honor.